IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STEPHEN HALEY, DEE ANNA HALEY, and KATELYN HALEY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. CIV-11-1207-D |
| AMERICAN FARMERS AND RANCHERS MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## O R D E R

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 62], filed pursuant to Fed. R. Civ. P. 56. Plaintiffs have responded in opposition to the Motion, which is fully briefed and at issue.

### Undisputed Facts

This case concerns uninsured motorist coverage for personal injuries suffered by Dee Anna Haley ("Mrs. Haley") and her teenage daughter, Katelyn Haley ("Katelyn"), in a motor vehicle accident that occurred on September 20, 2006.[1] The motorist at fault in the accident had a $25,000 limit of liability insurance. Stephen Haley and Mrs. Haley made a claim against their automobile insurer, Defendant American Farmers and Ranchers Mutual Insurance Company, under uninsured motorist coverage, which had a limit of $250,000 per person. For more than two years, Plaintiffs dealt directly with Defendant's claims representatives, and provided recorded statements, medical authorizations and treatment records, and other information regarding their claims. Mrs. Haley underwent an independent medical examination ("IME") by a neurologist at Defendant's request

---

[1] Because the teenager was not a minor when this action was filed, her name is not redacted.

in June, 2009.  Mrs. Haley was not provided with a copy of the IME report that Defendant received in July, 2009, and was not informed the initial report was favorable to her because Defendant considered the report to be incomplete.  Regarding Katelyn, Defendant continued to explore issues regarding scar revision surgery and dental work, which included an endodontist's evaluation in September, 2009.  Plaintiffs eventually retained counsel, who notified Defendant of the representation in October, 2009.

Defendant dealt thereafter with Plaintiffs' counsel, who obtained a copy of the IME report directly from the physician in December, 2009.  In July, 2010, Mrs. Haley obtained her own neuro-psychological evaluation, and was diagnosed with post-traumatic stress disorder ("PTSD").  She received treatment for PTSD from another neuropsychologist from August, 2010, until May, 2011. Plaintiffs, through counsel, demanded $150,000 to settle Katelyn's claim in January, 2011, and the policy limit to settle Mrs. Haley's claim in June, 2011.  In February, 2011, Defendant advised counsel of its previous evaluation of Katelyn's claim at $50,000 and offered $25,000 to settle her claim (deducting $25,000 received from other insurance).   In August, 2011, Defendant evaluated Mrs. Haley's claim at $105,000, and offered $80,000 in final settlement of her claim.

Plaintiffs filed this action on October 25, 2011.  The Complaint asserts claims of breach of contract and breach of the insurer's duty of good faith and fair dealing.  Under their tort theory of liability, Mrs. Haley and Katelyn seek additional compensatory damages for emotional pain and suffering as well as punitive damages, and Mr. Haley seeks damages for loss of consortium.  After completing discovery, Defendant filed the instant Motion, which seeks summary judgment on the following grounds:  1) Plaintiffs' tort claims are barred by the statute of limitations; 2) all claims fail

for lack of proof to establish Defendant's liability for breach of contract or bad faith; and 3) punitive damages are not warranted.

## Standard of Decision

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3); *see also Adler*, 144 F.3d at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Discussion**

**A.     Statute of Limitations**

Defendant contends Plaintiffs' tort claim of insurer's bad faith is barred by the two-year limitations period of Okla. Stat. tit. 12, § 95(A)(3).[2]  This is an affirmative defense on which Defendant bears the burden of proof. *See MBA Commercial Const., Inc. v. Roy J Hannaford Co..*, 818 P.2d 469, 472 (Okla. 1991).[3]  The limitations period begins to run when a claim accrues, "that is, when a litigant could have maintained his action to a successful conclusion." *Id.* at 473; *Sherwood Forest No. 2 Corp. v. City of Norman*, 632 P.2d 368, 370 (Okla. 1980).  However, "Oklahoma follows the discovery rule allowing limitations in tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury" or "would have discovered the act which gives rise to the claim." *See Resolution Trust Corp. v. Grant*,  901 P.2d 807, 813 (Okla. 1995); *Redwine v. Baptist Med. Ctr. of Okla., Inc.*, 679 P.2d 1293, 1295 (Okla. 1983).  Under this rule, "the beginning of the running of the statute of limitations is usually to be determined from the facts and circumstances of the particular case; and, where these are such that reasonable men might reach conflicting opinions thereon, the issue is a question for determination by the trier of the facts." *Redwine*, 679 P.2d at 1295.

---

[2] Defendant does not focus on a particular plaintiff's tort claim, or attempt to differentiate the factual circumstances regarding the two UM claimants.  The parties in their briefs address the time-bar issue as a general proposition directed at Plaintiffs' tort claims collectively.  Thus, the Court adopts the same approach.

[3] "A federal court sitting in diversity applies state law for statute of limitations purposes." *Burnham v. Humphrey Hospitality Reit Trust, Inc.*,  403 F.3d 709, 712 (10th Cir. 2005).  Thus, Oklahoma law supplies the rules of decision for the time-bar issues presented.

4

In the context of this case, the elements of a bad faith claim are: 1) a right to payment of UM benefits under the policy; 2) the insurer's unreasonable refusal to pay the claim; 3) the insurer's failure to deal fairly and in good faith with the insured; and 4) resulting damages. *See Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1126-27 (10th Cir. 2012); *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005). The Complaint alleges bad faith conduct by Defendant in its investigation and valuation of the UM claims, and the intentional withholding from Mrs. Haley of her IME results and statements leading her to believe no report had been completed. Plaintiffs assert they were unaware until counsel obtained the IME report that it was favorable to Mrs. Haley and that Defendant's representative had misled her concerning its existence in July, 2009.[4] Defendant's position is that Mrs. Haley was informed by the IME physician of her rights regarding protected health information, including a right to request a copy of medical records, and that she could have obtained the report sooner if she had acted with reasonable diligence.

Because this action was commenced on October 25, 2011, Plaintiffs' tort claims are barred only if they knew, or reasonably should have known, of Defendant's acts that allegedly constituted bad faith conduct by October 24, 2009. The summary judgment record does not make clear, however, whether Defendant had reached a final decision regarding Mrs. Haley's UM claim by that date. To the contrary, it appears that Defendant's representatives still considered the IME report to be incomplete because the IME physician had agreed to consider additional medical records. Plaintiffs' bad faith claim hinges, in part, on whether Defendant reasonably and in good faith valued Mrs. Haley's claim. Accordingly, viewing the record in the light most favorable to Plaintiffs, as

---

[4] Plaintiffs also contend they did not know until documents were produced in discovery that Defendant had failed to include certain recoverable items in valuing the UM claims. However, to the extent these omissions might constitute bad faith, this conduct was unknown to Plaintiffs when the Complaint was filed and could not form the basis for the tort claims then asserted.

required by Rule 56, the Court finds that a genuine dispute of material facts preclude a determination as a matter of law that Plaintiffs' bad faith claim had accrued by October 24, 2009.   Therefore, the Court finds that summary judgment is inappropriate on the basis of a time-bar defense to tort liability.

## B.      Breach of Contract

Defendant contends Plaintiffs cannot establish a breach of contract because the amounts it offered to pay in settlement of Mrs. Haley's and Katelyn's UM claims, if accepted, would have provided full compensation for their injuries and losses as a result of the accident.  This contention assumes Defendant's valuation of the UM claims is correct.  Because genuine disputes of material facts exist as to the proper value of the UM claims, the Court finds that summary judgment is inappropriate on Plaintiffs' breach of contract claim.

## C.      Insurer's Bad Faith

Defendant similarly contends that Plaintiffs cannot establish a bad faith claim because the undisputed facts show a legitimate dispute existed concerning the value of Mrs. Haley's and Katelyn's UM claims.  *See Gov't Employees Ins. Co. v. Quine*, 264 P.3d 1245, 1249 (Okla. 2011) (recognizing as well-established "an insurer's right to resist payment or resort to a judicial forum to resolve a legitimate dispute"); *see also Brown v. Patel*, 157 P.3d 117, 126-27 (Okla. 2007)*; Skinner v. John Deere Ins. Co.*, 998 P.2d 1219, 1223 (Okla. 2000); *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984).  The Oklahoma Supreme Court has expressly held that an insurer may negotiate or litigate the value of a claim:  "The duty of good faith and fair dealing merely prevents an insurer from offering less than what its own investigation reveals to be the claim's value." *Newport v. USAA*, 11 P.3d 190, 196-97 (Okla. 2000).

While the principles on which Defendant relies are well established, the cases offered in support of its argument assume that the insurer has promptly investigated and placed a value on the UM claim. *See, e.g.*, *Quine*, 264 P.3d at 1251. "A central issue in any analysis to determine whether breach [of the duty of good faith and fair dealing] has occurred is gauging whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are claimed violative of the duty of good faith and fair dealing." *Badillo*, 121 P.3d at 1093-94; *see Buzzard v. McDanel*, 736 P.2d 157, 159 (Okla. 1987).

With regard to Katelyn's UM claim, Plaintiffs contend Defendant engaged in bad faith conduct because it "failed to include lost wages in its evaluations, despite having full knowledge and proof of the amounts." *See* Pls.' Resp. Br. [Doc. No. 70] at 27. Plaintiffs also contend Katelyn's claim "was undervalued to an extent beyond a legitimate dispute" because Defendant failed to "objectively consider Katelyn's scar, pain and suffering from scar revision surgery, and her emotional losses from being unable to tumble." *Id.*[5]

Upon consideration of these issues, the Court finds that the record reflects Defendant properly investigated and attempted to evaluate Katelyn's claim. Plaintiffs do not contend otherwise. Each time Plaintiffs asserted an item of Katelyn's loss, Defendant endeavored to evaluate her claim and to assign a reasonable value. While a jury may ultimately decide that this value was insufficient to provide full compensation for Katelyn's loss, the Court finds that reasonable minds could not disagree concerning the sincerity of Defendant's effort. Specifically with regard to Katelyn's lost wages, Defendant's evaluator testified that she believed she "did factor that in." *See* Gisinger Dep. [Doc. No. 74-2] at 162:6-18. Regardless whether she was correct in this belief,

---

[5] Defendant admitted a causal connection between the accident and an impact on Katelyn's cheerleading skills by including her loss of a possible cheerleading scholarship in the evaluation of her loss.

however, the record makes clear that the valuation made, and the amount Defendant offered to pay for Katelyn's UM claim, was sufficient to compensate her for all economic or special damages. The only uncompensated element of damages, and the alleged undervaluation claimed by Plaintiffs, relates purely to indeterminate sums attributable to general damages, such as pain and suffering. Under these circumstances, an insurer does not act in bad faith by resisting payment when "there is legitimate dispute regarding the amount of noneconomic/general damages suffered by the insured." *See Quine*, 264 P.3d at 1251; *see also Garnett v. Gov't Employees Ins. Co.*, 186 P.3d 935, 944 (Okla. 2008). Therefore, because a legitimate dispute existed between the parties as to the value of Katelyn's UM claim, Defendant is entitled to summary judgment on the claim of bad faith asserted by Katelyn.

With regard to Mrs. Haley's UM claim, Plaintiffs contend Defendant engaged in bad faith conduct because it also failed to include lost wages in its evaluation of this claim, "failed to include future cost of care as to Mrs. Haley's neck," and engaged in "deception in hiding the IME report." *See* Pls.' Resp. Br. [Doc. No. 70] at 28. Plaintiffs rely on the case of *Tomlinson v. Combined Underwriters Life Ins. Co.*, 708 F. Supp. 2d 1284, 1296 (N.D. Okla. 2010), as involving "facts strikingly similar to AFR's conduct in this matter." *Id.* at 29. Defendant argues that the facts of *Tomlinson* are distinguishable. Defendant further argues that its failure to disclose or consider the IME report "has no bearing on whether [its] investigation or its evaluation was unreasonable." *See* Def.'s Reply Br. [Doc. No. 74] at 10.

Upon consideration of the summary judgment record, viewed in the light most favorable to Plaintiffs, the Court finds that a genuine dispute of material facts precludes summary judgment on the issue of bad faith conduct related to Mrs. Haley's UM claim. Regardless whether the Court would reach the same conclusion, the Court finds that reasonable jurors could conclude that

Defendant did not act in good faith or deal fairly with its insured by failing to disclose to Mrs. Haley that the IME report was favorable to her, and by arguably engaging in a concerted effort to discredit opinions that would increase the value of her claim.  In short, the Court finds that this plaintiff has identified facts that, although disputed, reasonably draw into question the reasonableness of Defendant's investigation and valuation of her UM claim.  Therefore, Defendant is not entitled to summary judgment on Mrs. Haley's bad faith claim based on such conduct.[6]

**D.     Punitive Damages**

Finally, Defendant contends punitive damages are not available under Plaintiffs' bad faith theory because they lack proof of sufficiently egregious conduct to support such an award.

The Oklahoma Supreme Court has made clear that "the availability of punitive damages in a case by an insured against his/her insurer for breach of the implied duty of good faith and fair dealing is not automatic, but rather is governed by the standard applicable in other tort cases." *Badillo*, 121 P.3d at 1106.  In *Badillo*, the supreme court found "the trial court was correct to withhold the issue of punitive damages from jury consideration" because "the trial record [did] not contain competent evidence from which a reasonable jury could find reckless disregard, sufficient to support an inference of evil intent and malice, on the part of insurers toward insured."  *Id*.  The court explained: "Under [Okla. Stat. tit. 23] § 9.1, for punitive damages to be allowed there must be evidence, at a minimum, of reckless disregard toward another's rights from which malice and evil intent may be inferred."  *Id.*

In this case, the sole basis of Plaintiffs' quest to recover punitive damages is their assertion that Defendant acted in reckless disregard of Mrs. Haley's (and Katelyn's) rights to recover the full value of the UM claim.  In particular, Plaintiffs contend that Defendant's conduct was reckless and

---

[6] Defendant's Motion does not address Mr. Haley's bad faith claim, and thus, the Court does not consider it.

deliberate in that it "engaged in a continuous course of deception by allowing Dee Anna Haley to continue to believe no IME report existed," and that malice may be inferred from Defendant's failure to follow its own claims handling standards.  *See* Pls.' Resp. Br. [Doc. No. 70] at 30.

Viewing the record in the light most favorable to Plaintiffs, the Court concludes that the genuine disputes of material facts related to Mrs. Haley's bad faith claims also preclude a summary adjudication of the issue of punitive damages. The Court finds that Plaintiffs have presented evidence that is sufficient, although marginally so, to support an inference of reckless disregard by Defendant in its conduct toward Mrs. Haley.

### Conclusion

For these reasons, the Court finds that genuine disputes of material facts preclude summary judgment on all claims, except Katelyn Haley's claim of bad faith based on the investigation and valuation of her UM claim.  As to only this claim, Defendant is entitled to summary judgment.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 62] is GRANTED in part and DENIED in part, as set forth herein.  The case shall proceed on Plaintiffs' breach of contract claim and claim of insurer's bad faith related to Dee Anna Haley.

IT IS SO ORDERED this 29th day of March, 2013.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE